IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 16–cr-30049-SMY |
| SKYLAR HENSHAW, | ) ) ) ) |
| Defendant. | ) |

## SENTENCING OPINION AND STATEMENT OF REASONS PURSUANT TO 18 U.S.C. § 3553(c)

This matter is before the Court on remand from the Seventh Circuit Court of Appeals for resentencing of Defendant Skylar Henshaw. This Sentencing Opinion supplements the findings made on the record during Defendant's resentencing hearing on April 19, 2018.

## INTRODUCTION

A two-count indictment was returned against Defendant Skylar Henshaw on April 19, 2016. (Doc. 1). Count 1 charged that on or about July 14, 2015, Henshaw and Corey D. Pryor (deceased as of the time of indictment) knowingly and intentionally attempted to possess with intent to distribute a mixture and substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Count 2 charged Henshaw with possession with intent to distribute a mixture and substance containing marihuana on or about July 14, 2015, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Henshaw was arrested on May 17, 2016 and released on bond on May 25, 2016. (Doc. 10). On October 20, 2016, absent a Plea Agreement, Henshaw pled guilty to both Counts and remained free on bond. (Docs. 33 and 46).

Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR") (Doc. 45), finding that Henshaw's relevant conduct consisted of

214.06 kilograms of marihuana equivalent units. (Id. at ¶ 10). Probation also determined that Henshaw qualified as a Career Offender under United States Sentencing Guidelines ("USSG") § 4B1.1, based on two predicate felony convictions for drug trafficking. (Id. at ¶ 24). Applying the Career Offender enhancement yielded an offense level of 32. *Id*. Henshaw was eligible for a 3 level reduction for acceptance of responsibility, resulting in a total offense level of 29. With a Criminal History Category of VI, the calculated Guidelines range was 151-188 months for imprisonment, 3 years for supervised release, a fine range of $15,000-$2,000,000, and a total $200 special assessment.

Prior to the original sentencing hearing, Henshaw filed a Sentencing Memorandum, largely devoted to arguing that the Career Offender enhancement should not be applied, as his predicate convictions were drug-related rather than crimes of violence. (Doc. 42). He also argued for a variance and sentence on the lower end of the Guidelines range for a non-Career Offender (70-87 months), on the bases that his involvement in the cocaine transaction was limited to testing the product for Pryor, that he had a difficult upbringing, that he had managed to construct a stable family life despite those issues, and that through his efforts at pre-sentence rehabilitation, he had made significant progress by staying off drugs, securing employment, and undergoing mental health counseling. (Id.). The Government chose not to file a Sentencing Memorandum or a written opposition to Henshaw's motion for a variance.

At the original sentencing, based on oral argument, Henshaw's allocution, and my consideration of the 18 U.S.C. § 3553(a) factors, I sentenced Henshaw to 5 years' probation. (Doc. 54). The Government appealed the sentence (Doc. 56), and the Seventh Circuit vacated the sentence and remanded the case for resentencing. (Doc. 74). This Court construes the Seventh Circuit's remand as a general remand.

## LEGAL ANALYSIS

### Legal Standard

On a general remand for resentencing, a district court need not "start from scratch." *United States v. Adams*, 746 F.3d 734, 743 (7th Cir. 2014). In other words, "[a] full remand does not require the district court to rehear all (or any) of the evidence that it heard at the original sentencing hearing…the record that was compiled during a prior sentencing hearing is still valid, and the district court at a later sentencing hearing may continue to rely on it." *United States v. Mobley*, 833 F.3d 797, 802 (7th Cir. 2016). Further, on general remand, "the district court may entertain new arguments as necessary to effectuate its sentencing intent, but it is not obligated to consider any new evidence or arguments beyond that relevant to the issues raised on appeal." *United States v. Whitlow*, 740 F.3d 433, 438–39 (7th Cir. 2014) (citing *United States v. Barnes*, 660 F.3d 1000, 1007 (7th Cir. 2011) and *Pepper v. United States*, 562 U.S. 476, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011)).

### Resentencing Hearing

#### *The Presentence Investigation Report*

Probation updated the PSR for resentencing purposes. (Doc. 99).[1] As accepted by the Court, the PSR provides the following information regarding the offense and Henshaw's history and characteristics: Pryor called Henshaw and "asked him to test a package, which Pryor expected to buy, for the presence of cocaine." (Id. at ¶ 10). The men drove to a public parking

---

[1] Upon remand, the Court ordered the Probation Office to prepare an updated PSR. (Doc. 75). Probation filed an updated PSR (Doc. 82), but subsequently, at the Government's request, filed a revised Report (Doc. 83) to "correct and clarify information concerning the investigation of the instant offense." (Doc. 83-1). This revision went beyond the scope of the Court's Order, adding factual allegations to the offense description. The additional allegations were known to the Government and Probation when the PSR was prepared and filed for the initial sentencing, and therefore could have been (but were not) included at that time. The Court used its discretion to exclude additional facts related to the offense conduct and new arguments on a general remand resentencing (as discussed below), and ordered Probation to file a PSR that was updated only with respect to events occurring after the prior sentencing. (Transcript of Sentencing Hearing of April 19, 2018, Doc. 105 at page 3, line 25 to page 7, line 11). Probation then filed the PSR (Doc. 99) relied upon by the Court in resentencing Henshaw.

lot to meet an individual who was actually a confidential source ("CS") working for the Drug Enforcement Agency, and who was purportedly going to sell Pryor one kilogram of cocaine. (Id.). Pryor obtained the package from the CS and returned to his car where Henshaw waited to test the package contents for cocaine. (Id.). Pryor and Henshaw were then arrested. (Id.).

After obtaining a search warrant, agents seized $55,090 in U.S. currency, 750 grams of marihuana, and five ecstasy pills at Skylar Henshaw's residence in Collinsville, Illinois. (Id. at ¶ 11). Henshaw "admitted during a voluntary interview that he was a street level marihuana dealer and the money seized was from drug proceeds[,]" although he asserted that about $13,000 of the funds seized "was money he earned playing poker." (Id.). During a later statement, Henshaw admitted that he had purchased marihuana from Pryor in the past, approximately 25 to 30 pounds, and that he owed Pryor $30,000 at least in part from a previous 30-pound marihuana purchase. (Id. at ¶ 12). After converting the powder cocaine quantity to marihuana equivalent units, adding the amounts of actual marihuana Henshaw had admitted buying and adding the amount of marihuana that had been found in his home, the Probation Office found that "defendant's total relevant conduct consists of 214.06 kilograms of marihuana equivalent units." (Id. at ¶ 13).

Henshaw's adult criminal history included convictions for misdemeanor Assault, Possession of Cannabis, Driving on Revoked License (twice), Unlawful Delivery of Cannabis and Unlawful Possession with Intent to Deliver Cannabis. (Id. at ¶¶ 31-39). He served time in jail for several of these offenses and was placed on conditional discharge or probation for each of them. (Id.). Henshaw also had an adjudication of delinquency as a juvenile for Aggravated Battery, for which he received a suspended sentence. (Id. at ¶ 32).

Henshaw had no relationship with his biological father until fairly recently. (Id. at ¶ 50). He was taken from his mother by the Illinois Department of Children and Family Services at

approximately nine months of age due to her drug use, and remained in foster care until the age of five, when his mother regained custody. (Id.). Henshaw's mother and stepfather were heavily involved in drugs while he was growing up – smoking marihuana and using cocaine in front of him daily, with "drug dealing in his house every day[.]" (Id.). Henshaw was physically and verbally abused by both his stepfather and mother growing up, and his stepfather was incarcerated on drug related charges when he was 15 years old. (Id.).

Henshaw has been married for three years. (Id. at ¶ 53). He resides with his wife and their three minor daughters; ages 9, 6 and 3. (Id.). Henshaw dropped out of high school in the ninth grade. (Id. at ¶ 66). He received his GED after his arrest in this matter. (Id. at ¶ 67). Henshaw states a desire to enroll in business courses at John A. Logan College. (Id. at ¶ 68).

Henshaw has been diagnosed with anxiety, and has been in counseling since at least July 1, 2016. (Id. at ¶¶ 58-59). His therapist reports that:

> Mr. Henshaw is able to identify and challenge cognitive distortions and uses skills learned in treatment to make responsible decisions. He identifies high-risk situations and reports avoiding former peers who are still engaged in criminal lifestyle. He actively sets realistic, pro-social short and long term goals and reports strong motivation to maintain abstinence from substance use and criminal behavior. His motivation to participate in treatment and his commitment to making progress in all areas of his life is admirable, as is his positive outlook, despite the uncertainty of his future and the many obstacles he has faced in life. He is an enthusiastic and exemplary client. (Id. at ¶ 59).

Henshaw has also struggled with substance abuse since at least the age of 17 – using marihuana daily and occasionally using ecstasy as well. (Id. at ¶ 61). Since his release on bond on May 25, 2016, he has been drug tested numerous times; testing positive on his first two tests due to marihuana use prior to his arrest. (Id. at ¶¶ 4, 65).

Henshaw was employed by Walker Funeral Home in Carbondale from mid-2016 through December 2017, doing maintenance, detailing cars, mowing and painting for $10 an hour. (Id. at ¶ 71). This employer provided a character letter submitted to the Court prior to Henshaw's

original sentencing, in which the employer stated, "Skylar came here not knowing very much about physical tasks. But he was willing to learn whatever the day laid out without complaint. Skylar is a hard worker and always has a smile on his face knowing what is next." (Id.). Henshaw also reported income from professional poker playing and Bitcoin trading. (Doc. 99 at ¶¶70-72). He recently purchased a food truck and started his own business, and sought out professional advice and assistance to accomplish this. (Id. at ¶ 69, Doc. 80, Doc. 94-2 at 3-4).

Henshaw has requested and been granted leave to travel outside the Southern District of Illinois nine times since he has been on bond and release; eight times to watch his eldest daughter compete in gymnastics (once coupled with a trip to Chicago to observe oral argument of his case before the Seventh Circuit) and once to purchase his food truck and drive it back from Kansas. (Docs. 37, 63, 65, 70, 72, 77, 80, 88 and 101). These trips have gone without incident, and he has not violated the terms and conditions of his release beyond the previously mentioned two residual positive drug tests.

*The Parties' Arguments*

After the case was remanded, Henshaw filed a second Sentencing Memorandum, requesting that the Court impose the same sentence it found appropriate at the initial sentencing– 5 years' probation. (Doc. 94). Incorporating his previous filing, Henshaw's second Sentencing Memorandum focused on why the 18 U.S.C. § 3553(a) factors warrant a downward variance to probation.

The Government filed a Sentencing Memorandum in which it argued that Career Offender status was appropriate and the § 3553(a) factors merited a sentence of at least 71 months imprisonment. (Doc. 96).[2]

---

[2] As discussed in footnote 1 and in more detail below, the Court exercised its discretion on a general remand for resentencing to exclude new evidence and arguments on the offense conduct, including the sections of the PSR which had been revised to reflect additional assertions of fact regarding the offense and exhibits which the Government intended to offer at the Resentencing Hearing. The Government's Sentencing Memorandum makes

The Court held a resentencing hearing on April 19, 2018. Prior to resentencing, Henshaw filed several objections to the then-current PSR (Doc. 83) which concerned newly raised facts and arguments. (Doc. 87). I exercised my discretion to exclude any newly-raised arguments and evidence from my consideration, and so did not entertain these objections. (Doc. 105 at page 9, line 6-14). Similarly, I denied the Government the opportunity to introduce evidence and testimony regarding the offense conduct, which it could have presented (but chose not to) at the first sentencing hearing. (Id. at page 11, line 15 through page 13, line 10). The Government also attempted to offer testimony by Sonny Williams, a purported associate of Henshaw, regarding alleged criminal activity by Henshaw after the date of his prior sentencing. (Id. at page 13, line 11 through page 14, line 10). While Williams had been disclosed by the Government as a potential witness to the offense conduct (Doc. 93), no mention was made of any post-sentencing conduct and no discovery on the issue had been provided to Henshaw. (Doc. 105 at page 14, line 7 through page 15, line 7). I therefore excluded the testimony. (Id. at page 15, lines 8-12).[3] During the hearing, the parties largely reiterated the arguments set forth in their Sentencing Memoranda, and Henshaw made a brief allocution.

*Sentencing Methodology*

In 2005, the United States Supreme Court held that the United States Sentencing Commission Guidelines were "effectively advisory." *United States v. Booker*, 543 U.S. 220, 245 (2005). The Court later clarified that the Guidelines are "advisory only." *Kimbrough v. United States*, 552 U.S. 85, 91 (2007). That said, "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain her conclusion that an unusually

---

extensive reference to these excluded materials, and thus the Court will address the Government's arguments only as supported by the final version of the PSR. Similarly, the Court disregards those portions of Defendant's second Sentencing Memorandum and the associated exhibits which pertain to events occurring before the first sentencing hearing.

[3] The Court notes that the Government has not brought any new charges on the basis of the evidence it intended to offer at the resentencing hearing.

lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Henshaw*, 880 F.3d at 396 (quoting *Gall v. United States,* 552 U.S. 38, 46 (2007)). "[A] major departure should be supported by a more significant justification than a minor one." *Gall* at 50.

The process for determining an appropriate sentence is relatively simple, though not always straightforward:

> First, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.... [T]he Guidelines should be the starting point and the initial benchmark. The district court must then consider the arguments of the parties and the factors set forth in § 3553(a). When determining a sentence, the court must make an individualized assessment based on the facts presented. If [it] decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. Finally, [a]fter settling on the appropriate sentence, [the court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. *United States v. Pankow*, 884 F.3d 785, 793 (7th Cir. 2018) (citing *Gall v. United States*, 552 U.S. 38, 50-51 (2007) and *Peugh v. United States*, 569 U.S. 530 (2013)) (internal quotation marks omitted)

At the heart of the sentencing process is consideration of the Section 3553(a) factors, which include:

> (1)     the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)     the need for the sentence imposed—
>
>        (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>        (B)     to afford adequate deterrence to criminal conduct;
>        (C)     to protect the public from further crimes of the defendant; and
>        (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)     the kinds of sentences available;
>
> (4)     the kinds of sentence and the sentencing range established for--
>        (A)     the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines….

> (5) any pertinent policy statement;
>  (A) issued by the Sentencing Commission….;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In assessing how the various statutory sentencing factors apply to an individual defendant, the district court "may not presume that the Guidelines range is reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009) (quoting *Gall* 552 U.S. at 50). Similarly, a sentence outside the Guidelines range "must not be presumed unreasonable." *United States v. McIlrath*, 512 F.3d 421, 426 (7th Cir. 2008).

Consistent with these principles, I began by determining the Advisory Guidelines range for Henshaw. I then considered whether any departures pursuant to the guidelines were available and appropriate; I determined that a downward departure was warranted pursuant to USSG § 4A1.3(b). Finally, I considered whether to vary from the alternative Guidelines range based on my independent obligation to apply the 18 U.S.C. § 3553(a) factors.

### *Assessment and Application of the 18 U.S.C. § 3553(a) Statutory Factors*

#### *Career Criminal Enhancement*

By strict application of the Guidelines, including a career offender enhancement, Henshaw's offense level is 29, and his criminal history category is VI. This results in a Guidelines sentencing range of 151 to 188 months of imprisonment.

District courts have the discretion to vary from the Guidelines based on policy disagreements. See *Spears v. United States*, 555 U.S. 261, 264 (2009). This Court has such a policy disagreement with the career offender enhancement – a concern shared by the United States Sentencing Commission ("Commission") itself.

In 2016, the Commission published *The United States Sentencing Commission, Report to the Congress: Career Offender Sentencing Enhancements* (August 2016),[4] in which it divided defendants classified as Career Offenders into three groups: those with only drug offenses as predicate and current offenses; those with crimes of violence as predicate and current offenses; and those with a mix. The Commission examined the sentences and outcomes of individuals in these three groups and found "clear and notable differences between drug trafficking only career offenders and career offenders who have committed a violent offense." The Commission noted that career offenders who have committed violent offenses reoffend at a higher rate than drug trafficking only career offenders, and are "more likely to commit another violent offense in the future." (Id. at 26-27). The Commission then concluded:

> … drug trafficking only career offenders are not meaningfully different than other federal drug trafficking offenders and therefore do not categorically warrant the significant increases in penalties provided for under the career offender guideline. Moreover, drug trafficking only offenders generally do not warrant similar (or at times greater) penalties than those career offenders who have committed a violent offense. Accordingly, it would be appropriate to restructure the statutory directive and the resulting career offender guideline to distinguish those offenders who are sentenced based solely on an instant drug trafficking offense and two drug trafficking predicates. (Id. at 27).

The Commission recommended Congress amend the law so that it "no longer include[es] those who currently qualify as career offenders based solely on drug trafficking offenses." (Id. at 3). The Commission went on to explain, "[t]hese reforms would help ensure that federal sentences better account for the severity of the offenders' prior records, protect the public, and avoid undue severity for certain less culpable offenders." (Id.). No amendment has been passed, so we find ourselves in a space in which the Commission disagrees with its own Guidelines as applied.

"In the main, the Commission developed Guidelines sentences using an empirical

---

[4] Available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/criminal-history/201607_RtC-Career-Offenders.pdf

approach based on data about past sentencing practices, including 10,000 presentence investigation reports….[t]he Commission modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like." *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (citations omitted).  However, the Commission "did not use this empirical approach in developing the Guidelines sentences for drug-trafficking offenses[,]" but rather adopted the relatively simplistic classification scheme Congress had implemented in the Anti–Drug Abuse Act of 1986 ("1986 Act"), 100 Stat. 3207. 552 U.S. at 95-96.  This departure from the Commission's empirical and adaptive approach has in turn affected almost all sentencing issues relating to drug-only offenses, resulting in situations like the present one; where Congressional mandates run directly contrary to what the Commission recommended after applying its standard methods.

For the foregoing reasons, I find that the Career Offender Guidelines' categorical treatment of drug trafficking only offenders as severely as those who have a history of violence is unjust, results in sentences that are unduly harsh for the former, and therefore fails to promote the goals of sentencing.  At the same time, for those individual cases where a higher-than-Guidelines sentence is warranted for a drug-trafficking-only offender, the 18 U.S.C. § 3553(a) factors provide adequate bases on which to impose such a sentence.

In its Sentencing Memorandum and at resentencing, the Government pointed out Henshaw's juvenile adjudication for Aggravated Battery and misdemeanor conviction for Assault at the age of 19.  I considered these factors as part of my § 3553(a) analysis, but concluded that the incidents were significantly remote in time and insufficient to shift Henshaw from a "drug-trafficking-only" offender to a "mixed" offender.  On the basis of policy disagreements, I found the application of the career offender enhancement overstates Henshaw's criminal history and the likelihood that he will commit other crimes in the future, and pursuant to

USSG § 4A1.3(b), departed down to an offense level of 21 and criminal history category V. This resulted in an alternative Guidelines range of 70 to 87 months.

I then turned to my consideration of the § 3553(a) factors. Based on my analysis, as discussed below, I again sentenced Henshaw to a term of 5 years' probation on Counts 1 and 2, to run concurrently, and re-imposed a $200 fine and $200 special assessment.

*Section 3553(a) Analysis*

Section 3553(a) directs a sentencing court to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing including, to reflect the seriousness of the crime, to promote respect for the law, to provide just punishment, to deter criminal conduct, to protect the public from future crimes by the defendant, and to promote rehabilitation. *United States v. Jackson*, 537 F. Supp. 2d 990, 991 (E.D. Wis. 2008). The remaining 3553(a) factors aid courts in making this determination, and are largely discussed above (i.e. nature of offense, defendant characteristics, etc.).

A sentence is reasonable if the district court "gives meaningful consideration to the factors enumerated in 18 U.S.C. § 3553(a), including the advisory sentencing guidelines, and arrives at a sentence that is objectively reasonable in light of the statutory factors and the individual circumstances of the case." *United States v. Boroczk*, 705 F.3d 616, 623 (7th Cir. 2013) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). Sentencing judges "have discretion over how much weight to give a particular factor. Although the weighting must fall 'within the bounds of reason,' those bounds 'are wide.' " *Boroczk* at 624 (quoting *United States v. Reibel*, 688 F.3d 868, 872 (7th Cir. 2012)).

1. General Deterrence

The principle of general deterrence is premised on an assumption that imposing an appropriate sentence will dissuade others from committing similar crimes. Here, the Court finds

little indication that a sentence of imprisonment would deter anyone from taking Henshaw's place as a low-level drug dealer.

As noted by District Judge Lynn Adelman in *United States v. Fernandez*, 436 F. Supp. 2d 983, 989 (E.D. Wis. 2006), "criminologists and law enforcement officials testifying before the Commission have noted that retail-level drug traffickers are readily replaced by new drug sellers so long as the demand for a drug remains high. Incapacitating a low-level drug seller prevents little, if any, drug selling; the crime is simply committed by someone else." (quoting U.S. Sentencing Commission, *Fifteen Years of Guideline Sentencing* 133-34 (Nov. 2004)). This testimony suggests that significant prison terms are not particularly effective in deterring others from engaging in drug dealing – a conclusion which finds support in the rising rate of incarceration for drug crimes even since the enactment of more stringent laws and penalties.[5]

That is not to say that harsh prison sentences don't deter some individuals from engaging in drug trafficking. The question is, however, whether a sufficiently important consideration exists to justify the sentence I imposed, notwithstanding the possibility of general deterrence. See *Henshaw*, 880 F.3d at 397–98 ("If increased criminal activity is not punished through an increased sentence, **without at least some compelling reason for not doing so**, then others will not be sufficiently deterred from repeated criminal activity." (emphasis added)). In this instance, I found the general deterrent impact of a significant prison sentence is outweighed by considerations of specific deterrence, just punishment and rehabilitation.

2. Specific Deterrence

---

[5] This is also not to say that general deterrence does not have a place in any sentencing. The Seventh Circuit has recognized that the importance and effectiveness of general deterrence may vary by the type of crime. See *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018) ("We previously have endorsed the idea that white-collar criminals act rationally, calculating and comparing the risks and the rewards before deciding whether to engage in criminal activity. They are, therefore, prime candidates for general deterrence." (quoting *United States v. Warner*, 792 F.3d 847, 860–61 (7th Cir. 2015).

The purpose of specific deterrence is the prevention of future harm to the public by the defendant, without reference to the mechanism for achieving it. In other words, while incarceration may certainly deter a given offender from committing future crimes, it is not the only route to the goal. Rehabilitation can also prevent reoffending and recidivism. As the Seventh Circuit noted in *United States v. Robertson*, 662 F.3d 871 (7th Cir. 2011), "self-motivated rehabilitation lends strong support to the conclusion that imprisonment is not necessary to deter a defendant from engaging in future criminal conduct or to protect the public from his future criminal acts." *Robertson*, 662 F.3d at 878 (quoting *Gall*).

What sentence is the most likely to prevent the public from being harmed by Henshaw? Since his arrest, Henshaw appears to have placed himself on a path out of the life of drugs and crime. The more successful he is in finding a place in the wider world, the less likely he is to return to his criminal ways. Under the circumstances, a term of imprisonment would likely compromise the chances he has of living a non-criminal life; almost certainly scuttling his business venture and depriving him of his family support system. On the other hand, I am not persuaded that a 12+ year jail term would make him any less likely to reoffend after release. Given my overarching responsibility to impose a sentence that is sufficient but not greater than that necessary to accomplish the objectives of sentencing, I cannot conclude that the goal of specific deterrence would be better served by a term of imprisonment. In fact, it would most likely be counterproductive to that end.

I acknowledge that previous terms of probation (or its functional state equivalent) did not prevent Henshaw from reoffending. But neither did several stints in jail and prison. Until his arrest in this case, nothing seemed to deter Henshaw from dealing drugs. This has changed, however. Whether it is because of his family, because he has finally matured or because the proverbial lightbulb has finally come on, probation and conditions of supervised release are

having a deterrent effect and are serving to protect the public. Based on the PSR and all available information, I cannot reasonably conclude that a prison term would impact specific deterrence any more than either Henshaw's previous incarcerations or his current probation.

    3. <u>Just Punishment, Promotion of Respect for the Law and Seriousness of the Crime</u>

"Punishment is justified under one or more of three principal rationales: rehabilitation, deterrence, and retribution. It is the last of these, retribution, that most often can contradict the law's own ends." *Kennedy v. Louisiana*, 554 U.S. 407, 420 as modified (Oct. 1, 2008), opinion modified on denial of reh'g, 554 U.S. 945 (2008) (quotation omitted). "Retribution is no longer the dominant objective of the criminal law. Reformation and rehabilitation of offenders have become important goals of criminal jurisprudence." *Williams v. People of State of N.Y.*, 337 U.S. 241, 248 (1949).

Probation coupled with the appropriate conditions "can have a significant impact on both [the offender] and society...Often these conditions comprehensively regulate significant facets of their day-to-day lives...They may become subject to frequent searches by government officials, as well as to mandatory counseling sessions with a caseworker or psychotherapist." *Gall*, 552 U.S. 38, 47 n. 4 (2007) (quotation omitted). While certainly not as harsh as imprisonment, probation is by no means an easy punishment.

Henshaw's crimes are serious. Regardless of whether his involvement with cocaine was limited to testing the product for a friend, he did aid the enterprise and was an active and significant street-level marihuana dealer in his own right. The toll drugs take is clear. That said, the need to satisfy the concepts of retribution and promoting respect for the law are outweighed in this case by the goals of rehabilitation and specific deterrence.

    4. <u>Sentence Disparities</u>

Other than the Advisory Guidelines range (which I have found overstates Henshaw's

criminal history), there is no evidence before the Court to suggest the type of sentences defendants with similar records who have been found guilty of similar conduct have received. Moreover, to be a meaningful factor in this case, disparity must be measured by reference to other offenders who not only have similar mitigating factors and aggravating factors, but who also have similarly demonstrated post-arrest and post-sentence rehabilitative efforts. In that vein, if another individual was before the Court with the same record, same background and a similar rehabilitation effort, I would be hard-pressed to impose a different sentence. Obviously, by employing the term "unwarranted," the Guidelines contemplate some disparity in sentencing when, as here, it is warranted and justified.

### 5. Rehabilitation

In *Pepper v. United States*, 562 U.S. 476, 504-505 (2011), the Supreme Court held that on a general remand for resentencing, a district court "may consider evidence of a defendant's postsentencing rehabilitation at resentencing and such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range." This Court has done so.

Normally, determining what type disposition best serves the objectives of sentencing, including rehabilitation, involves educated guesswork. A sentencing judge relies heavily on the hard work of the probation officer in setting forth the Advisory Guidelines and calculations, and detailing the offender's criminal and personal history, education, substance abuse or mental health issues, and other relevant factors in the PSR. The judge must then take this information and apply his or her own experience, judgment and discretion to determine what sentence best achieves the applicable sentencing goals. In many cases, the only opportunity for offenders to access rehabilitative services such as GED programs, substance abuse/psychological counseling and job training, is in the prison context. In other cases, such as here, imprisonment would actually be detrimental to the rehabilitation process.

Beginning with his arrest, Henshaw has demonstrated steady, positive, and self-directed progress toward turning his life around. Once the drugs he ingested prior to his arrest were out of his system, he has had consistently clean drug tests. He has been compliant with all of his conditions of release and probation. He has completed his GED, and has plans to take additional college courses in business. He is in counseling and is apparently a model client. He has opened his own food truck business, and has traveled outside the Southern District of Illinois a number of times without incident, mostly in support of his children's activities. A term of imprisonment would serve to derail much of the progress Henshaw has made.

Henshaw's family support system appears to be strong, and he has demonstrated a commitment to his children. He has put the pieces in place to ensure that he can support himself and his family through legitimate work instead of resorting to drug dealing. Incarceration would largely deprive him of his support structure and compromise his efforts to earn a living on the right side of the law.

Under these unique circumstances, I found that a significant term of probation with appropriate conditions would do more to advance the goal of rehabilitation than a term of incarceration. This conclusion is bolstered by the fact that much of Henshaw's progress has taken place since his initial sentencing. While judges are typically relegated to imposing sentences while staring into a crystal ball, this Court has the unusual benefit of knowing to what extent probation actually impacts Henshaw and advances the relevant sentencing objectives. Having shown by both action and words that he has been deterred from committing crimes, has gained a respect for the law, and does not pose a significant risk to the public, Henshaw has demonstrated that a sentence of probation is sufficient and appropriate.

The Government suggests that the Seventh Circuit draws a distinction between self-rehabilitation and rehabilitation that occurred after the offender was charged with a crime. (Doc.

105 at page 27 line 14 through page 28 line 18). Specifically, citing *Robertson*, 662 F.3d at 878 (7th Cir. 2011) ("[d]emonstrated self-motivated rehabilitation is direct and relevant evidence of the need for the sentence imposed ... to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training ... or other correctional treatment in the most effective manner") (quotation omitted), the Government argues that post-arrest rehabilitation should be entitled to less consideration than the pre-arrest rehabilitation. I agree that post-arrest rehabilitation must be viewed with a healthy dose of skepticism. However, I am satisfied that Henshaw's rehabilitative efforts are genuine.

## CONCLUSION

I am aware the sentence I am imposing represents a significant variance from the range of punishments suggested by the Advisory Guidelines. I did not do so lightly or without giving due consideration to the concerns expressed in *United States v. Henshaw*, 880 F.3d 392 (7th Cir. 2018). I remain persuaded that a sentence within the Guidelines range would be greater than necessary under 18 U.S.C. § 3553(a). Accordingly, and for the reasons stated above, I find that Defendant Skylar Henshaw should be sentenced to 5 years' probation, a $200 fine, and a $200 special assessment.

**IT IS SO ORDERED.**

**DATED: July 3, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**
